UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

- v. -

JOSEPH SPENCER,

Defendant.

04 Cr. 1156

**MEMORANDUM OPINION
AND ORDER**

---

Richard J. Holwell, District Judge:

In late 2004, Joseph Spencer pleaded guilty to a one-count information for bank fraud. On February 20, 2006, this Court sentenced him to time served and three years of supervised release. Alleging that Spencer has violated certain conditions of his supervised release, the government now petitions the Court to revoke it. In response, Spencer moves to dismiss the government's revocation petitions on the ground that this Court lacks jurisdiction to hear them, and he also contests their merits. For the reasons that follow, the Court will deny the defendant's motion and grant the government's request to revoke the defendant's term of supervised release.

**BACKGROUND**

On May 19, 2004, the defendant, Joseph Spencer, was arrested for his alleged role in a bank fraud. (Govt.'s Response to Def.'s Mot. to Dismiss ("Govt.'s Response") 1.) He later pleaded guilty to a one-count information. (*Id.* 2.) The United States Probation Office for the Southern District of New York determined that the United States Sentencing Guidelines Range was 27 to 33 months' imprisonment and recommended a sentence of 27 months. (*Id.* 2.) On February 22, 2006, this Court sentenced the defendant to time served and three years of

supervised release.  (*See* Court's Judgment dated February 22, 2006 ("Judgment") 3.)  The Court imposed standard conditions of supervision, including that the defendant not commit another federal, state, or local crime, and that the defendant notify the probation officer at least ten days prior to any change in residence or employment.  (*Id.* 3.)

Less than two years after this Court sentenced Spencer, the Probation Office petitioned the Court for a warrant for Spencer's arrest.  The Petition for Warrant alleged that Spencer had committed certain specific violations of the terms of supervised release, and a probation officer signed it "under penalty of perjury."  (Govt.'s Response, Ex. A.)  Attached to the Petition was a "Request for Court Action Detailing Probable Cause," which further explained the violations.  (*Id.*)  Specifically, the Request described Spencer's arrest by the New York City Police Department on January 9, 2008, for his alleged involvement in a scheme to cash unauthorized checks.  (*Id.*)  After reviewing the Petition and Request, this Court ordered the issuance of a warrant on February 14, 2008.[1]  The defendant surrendered less than two weeks later and was released on his own recognizance.  (Govt.'s Response 3.)

A revocation hearing was scheduled for May 21, 2008, but was adjourned a number of times.  It was eventually held on June 3, 2009.  The hearing addressed two questions: whether this Court retains jurisdiction over the revocation petitions, and whether, based on a preponderance of the evidence, Spencer violated certain conditions of his supervised release.

---

[1] The Probation Office submitted to this Court an amended Petition for Warrant on April 28, 2008.  (*See* Govt.'s Response, Ex. B.)  That Petition, and an attached Amended Request, added an additional allegation to the original Petition.  The Court issued a second warrant based on the Amended Petition.  Because the government is not requesting revocation based on this additional allegation, the Court need not address that allegation here.

2

## DISCUSSION

**I.      Motion to Dismiss**

Spencer argues in his motion to dismiss that the Court lacks jurisdiction to revoke his term of supervised release.  Because the Court did not revoke Spencer's supervised release before the term expired, its jurisdiction depends on 18 U.S.C. § 3583(i), which reads,

> The power of the court to revoke a term of supervised release for violation of a condition of supervised release . . . extends beyond the expiration of the term of supervised release for any period *reasonably necessary* for the adjudication of matters arising before its expiration if, *before its expiration, a warrant or summons has been issued* on the basis of an allegation of such a violation.

18 U.S.C. § 3583(i) (emphasis added).  The defendant raises two objections to the Court's jurisdiction under this provision.  First, he claims that no valid warrant issued.  Second, he argues that, in any case, the delay between the expiration of the defendant's term of supervised release and the revocation hearing was not reasonably necessary to adjudicate the matter.  Neither objection has merit.

**A.      Valid Warrants Issued During the Term of the Defendant's Supervised Release**

Whether a valid warrant issued during the term of the defendant's supervised release turns on the meaning of "warrant" in Section 3583(i).  On this point the Second Circuit has taken no position, and several other Circuits are divided.  The defendant urges the Court to adopt the position taken by the Ninth Circuit in *U.S. v. Vargas-Amaya*, 389 F.3d 901 (9th Cir. 2004).  The court in *Vargas-Amaya* held that a warrant issued during a term of supervision is subject to the Fourth Amendment's constraints; it must thus be based on probable cause and be supported by oath or affirmation.  *Id.* at 907.  In *U.S. v. Garcia-Avalino*, 444 F.3d 444 (5th Cir. 2006), the Fifth Circuit took a contrary view.  It found that there is no "implicit sworn-facts requirement embedded in the word . . . 'warrant'" in Section 3583(i).  *Id.* at 445.

3

Whatever the right interpretation of Section 3583(i) may be, the Court need not reach the question. Even under the Ninth Circuit's more stringent standard, a valid warrant issued during the term of Spencer's supervised release. First, both warrants issued by the Court in this matter satisfied the "oath or affirmation" requirement. Both Petitions for Warrant were signed by a United States Probation Officer who "declare[d] under penalty of perjury that the foregoing is true and correct." (*See* Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem."), Ex. B.) Swearing that facts are true under penalty of perjury has the same effect as an oath. *See* 28 U.S.C. § 1746 ("Wherever, under any law of the United States . . . any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, . . . such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury.").

Second, both warrants issued by the Court in this matter satisfied the "probable cause" requirement. Spencer argues that the Court's orders to issue two warrants against him were not supported by probable cause findings. But he cites no authority for the proposition that the Court must use the magic words "probable cause" in order to make such a finding. In this case, both warrant petitions referred to "Attached Request[s] for Court Action *Detailing Probable Cause*" (emphasis added). Moreover, both petitions, and the requests attached to those petitions, adequately established probable cause for the issuance of a warrant.

The first Petition for Warrant identified the specific conditions that the defendant allegedly violated—including his alleged commission of crimes and his failure to notify the probation officer of a change in residence or a change in employment. (*See* Govt.'s Response,

Ex. A.)  And the request attached to that petition detailed the circumstances relating to the defendant's alleged crime—"deposit[ing] numerous checks into his checking account which belonged to the victim" and then withdrawing the proceeds—and his subsequent arrest by New York City police.  (*See id.*)  Similarly, the amended petition for a warrant identified an additional crime that the defendant had allegedly committed during supervised release, and the attached amended request detailed the nature of that crime and the circumstances of his arrest for it.  (*See* Def.'s Mem., Ex. B.)  These statements, which the Court relied upon in deciding to issue warrants for the defendant's arrest, were more than sufficient to establish probable cause.

**B.**     **The Delay Between the Expiration of the Term of the Defendant's Supervised Release and the Date of Revocation Is Justified as "Reasonably Necessary" to Adjudicate the Revocation Petitions**

The defendant contends that, even if warrants validly issued during the term of his supervised release, the Court lost its jurisdiction to revoke his supervised release because the revocation did not occur within a period that was "reasonably necessary" to adjudicate matters arising during the term of supervised release.  *See* 18 U.S.C. § 3583(i).  The Court disagrees.

Congress enacted subsection (i) of 18 U.S.C. § 3583 in September of 1994.  *See* Pub. L. 103-322, 108 Stat. 1831, 2017 (Sept. 13, 1994).  That provision made explicit what many courts had already believed was implicit about the statutory regime governing supervised release: "district courts retain[] jurisdiction to revoke supervised release for a reasonable time after the scheduled end of the supervised release term if the revocation proceedings were initiated within the supervised release term."  *U.S. v. Neder*, No. 07-12210, 2008 WL 647036, at *2 n.2 (11th Cir. 2008).  Congress codified that understanding in Section 3583(i) by providing that, where supervised release has expired, courts' revocation power extends as long as "reasonably necessary" to adjudicate matters that arose during the supervised release term.

5

As the Second Circuit has noted, "the meaning and scope of the term 'reasonably necessary' is informed by the legislative context of the provision in which it is found." *U.S. v. Ramos*, 401 F.3d 111, 116 (2d Cir. 2005). The Second Circuit has said that Section 3583(i)'s "most likely purpose" was "to make absolutely clear Congress' earlier intention that sentencing courts have the authority to hold hearings to revoke or extend supervised release after expiration of the original term if they issue a summons or warrant during the release period." *Id.* Reasoning that "reasonable necessity" is "a relatively elastic concept," the court in *Ramos* upheld a district court's decision to revoke supervised release even though that decision was issued seventeen months after the defendant's violation of the terms of his supervised release. *Id.* at 118. The court noted that the proceedings had been stayed for some time at the defendant's request and that the defendant was not prejudiced by the delay. Other courts have revoked supervised release after similar delays. *See U.S. v. Manning*, No. 07-4472, 2009 WL 723154, at *3 (6th Cir. 2009) (upholding five-month delay between expiration and revocation of supervised release); *U.S. v. Hacker*, 450 F.3d 808, 814 (8th Cir. 2006) (upholding eleven-month delay); *U.S. v. Rodriguez*, No. 98-0975, 2005 WL 2850256, at *2 (11th Cir. 2005) (upholding eight-month delay).

Here, the defendant did not object to adjournments of the revocation proceeding until late April of 2009, and the revocation hearing took place little more than one month thereafter. Moreover, the defendant has not argued that he was prejudiced by any delay. The Court thus concludes that it has retained jurisdiction to adjudicate the revocation petitions, and it now turns to the merits of those petitions.

**II.     Merits of the Allegations that the Defendant Violated Conditions of Supervision**

18 U.S.C. § 3583(e)(3) provides that a court may revoke the defendant's term of supervised release "and require the defendant to serve in prison all or part of the term" if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). The government has alleged that Spencer violated several conditions of his supervised release. Specifically, it has alleged that Spencer committed crimes; failed to report a change in address; and failed to report a change in employment.

**A.     The Allegations that the Defendant Committed Crimes**

One of the conditions of Spencer's supervised release was that he "not commit another federal, state or local crime." (*See* Judgment 3.) The government alleges that, during Spencer's supervised release, he endorsed and deposited stolen checks into a bank account, then later withdrew the proceeds. The government argues that Spencer's actions amounted to several crimes under New York law: second-degree forgery; second-degree possession of a forged instrument; third- and fourth-degree grand larceny; and third- and fourth-degree criminal possession of stolen property.

Spencer has not denied that he stole three checks from a Citibank account-holder; that he possessed those checks; that he endorsed them; that he deposited them into a bank account to which only he had access; and that he withdrew the proceeds. Instead, Spencer's argument is that the government has not proven its case on these charges.

The Court concludes otherwise. The government has shown by a preponderance of the evidence that Spencer committed crimes while on supervised release. At the revocation hearing, the government called a witness who testified that three checks had been forged in his mother's name and drawn against a bank checking account that he and his mother held. (June 3, 2009

7

Hearing Tr. ("Tr.") 66:3–5.)   The government also presented evidence that in August of 2007, the three checks, made payable to Sean Spencer for a total of $11,500, were deposited in a Citibank checking account in Spencer's name.  (Tr. 70:5–75:15.)  The evidence showed that only Spencer was listed as an account-holder and was authorized to use the account in August of 2007, and that he withdrew or used for purchase a total of $5,000 from the account within ten days of depositing the forged checks.  (Tr. 75:4–75:15; Govt. Ex. 22.)

The government's evidence indicated a similarity between the defendant's handwriting and signature and the signature "S. Spencer" found on the reverse side of each of the forged checks.  (*Compare* Govt. Ex. 1, 3, 4, 7F, 24, 25, 26, and 27.)  The government also showed that when the defendant was arrested, he was carrying several identification documents that contained his picture and were in either the name "Joseph Spencer" or "Sean Spencer."  (Govt. Ex. 7A, 7B, 7D, 7E, 7F.)  Finally, the defendant's statements to the authorities soon after his arrest that he had deposited checks of unknown origin in exchange for payment, while not admissions of the crimes the government has alleged, do implicate the defendant in the conduct that forms the basis for the government's charges against him.  (*See* Govt. Ex. 8.)

This evidence establishes by a preponderance that Spencer committed second-degree forgery under New York law.  The elements of that crime are: (a) with "intent to defraud, deceive or injure another," (b) to "false make[], complete[] or alter[] a written instrument" (c) "which is or purports to be . . . [a] commercial instrument . . . or other instrument which does or may evidence, create, transfer, terminate or otherwise affect a legal right, interest, obligation or status."  N.Y. Penal Law § 170.10(1) (McKinney 1999).  Spencer believes that the facts allege do not satisfy the third element; he argues that a personal check is not commercial in nature, and thus he could not have falsely made a *commercial* instrument.  (Def.'s Post-Hearing Mem. 5.)

8

But the defendant cites no authority for that proposition, and it defies common sense that New York law would criminalize forgery of company checks but not forgery of personal checks. Moreover, the defendant's argument misunderstands the term "commercial" in this context as synonymous with "business." It is not. New York state courts have, for example, convicted defendants under this provision for forging traveler's checks. *See People v. Hayes*, 520 N.Y.S.2d 987, 988 (N.Y. App. Div. 1987). Finally, even assuming that a personal check is not a commercial instrument within the meaning of the statute, it is surely an "other instrument" that "evidence[s], create[s], [or] transfer[s]" a legal interest. *See* N.Y. Penal Law § 170.10(1). Thus Spencer's contention fails.

The evidence also establishes by a preponderance that Spencer possessed a forged instrument in the second degree under New York law. The elements of that crime are: (a) "with knowledge that [the instrument] is forged" and (b) "with intent to defraud, deceive or injure another," (c) to "utter[] or possess[] any forged instrument." N.Y. Penal Law § 170.25 (McKinney 1999). The defendant argues that he could not be convicted of both forgery of an instrument and criminal possession of that very instrument. (Def.'s Post-Hearing Mem. 6.) But, as the government responds, Spencer could be convicted of both crimes with respect to different instruments, and here, three different checks were forged and criminally possessed.

The evidence further establishes that Spencer committed larceny and criminal possession of stolen property under New York law. Larceny is the crime of stealing property "from an owner thereof." *See* N.Y. Penal Law § 155.05(1) (McKinney 1999). If the property's value exceeds three thousand dollars, the crime is third-degree larceny, *id.* § 155.35; if its value exceeds only one thousand dollars, the crime is fourth-degree larceny, *id.* § 155.30(1). To criminally possess stolen property, one must (a) "knowingly possess stolen property" (b) with

9

intent to benefit himself or a person other than an owner thereof or to impede the recovery by an owner thereof." *Id.* § 165.50. Possessing property whose value exceeds three thousand dollars is a third-degree offense, *id.* § 165.50; possessing property whose value exceeds one thousand dollars is a fourth-degree offense, *id.* § 165.45(1).

Although the government's revocation petitions allege that Spencer committed these two crimes in both the third and fourth degrees, Spencer rightly notes that grand larceny and criminal possession of stolen property in the fourth degree are lesser included offenses of those offenses in the third degree. (Def.'s Post-Hearing Mem. 6–7.) Assuming that the defendant can be convicted of these offenses in the third degree, he cannot also be convicted of them in the fourth degree.

Spencer separately objects to the allegation that he committed larceny under New York law, because he did not take, obtain, or withhold property from "an owner thereof"—that is, he could only have obtained money directly from Citibank, and Citibank did not own the money in the accounts against which the forged checks were drawn. (Def.'s Post-Hearing Mem. 6.) It is true that the checking account-holders, the Rosenfelds, were the owners of the property that was stolen. But the defendant, by his conduct—depositing forged checks in his account, then withdrawing the proceeds—*did* take, obtain, or withhold property from the Rosenfelds, by causing Citibank to transfer money from the Rosenfelds' account to the defendant's. *See People v. Bigness*, 813 N.Y.S.2d 570, 572 (N.Y. App. Div. 2006) ("A person obtains property when he or she brings about the transfer of property or a legal interest therein").

The government's evidence supports a finding that the defendant forged three checks, endorsed them in his name, deposited them into his bank account, and used the proceeds himself. The Court finds that the government has shown by a preponderance of the evidence that the

10

defendant committed forgery in the second degree and grand larceny in the third degree; criminally possessed stolen property in the third degree, and criminally possessed forged instruments in the second degree.

### B. The Allegations that the Defendant Failed to Report a Change in Address and a Change in Employment

Condition Number 6 of the terms of Spencer's supervised release provides that "the defendant shall notify the probation officer at least ten days prior to any change in residence or employment." (Judgment 3.) Spencer is alleged to have violated that condition by his failure to report a change in address and a change in employment. The Court finds that the government has met its burden on both counts.

According to the Probation Department's final Presentence Investigation Report, dated February 3, 2006, Spencer's address of record was 966 East 96th Street, Brooklyn NY 11236. (Govt.'s Post-Hearing Mem. 8.) During the course of his supervised release, Spencer continued to report his address, both verbally to his probation officer and on monthly supervision reports, as 966 East 96th Street. (*Id.*; Tr. 38:3–8.) In January 2008, his probation officer learned that Spencer was residing elsewhere and confronted him about it; Spencer admitted that he had been staying at other addresses, although he refused to provide the officer with those addresses. (Tr. 39:6–23.) Even after that conversation, Spencer reported in his February 2008 monthly supervision report that he was residing at 966 East 96th Street. When his probation officer visited that address in late March of 2008, he was told that Spencer had not stayed there for about a month. (Tr. 41:6–8, 19–22; 56:6–57:7.) Spencer now argues that these other residences were only "temporary stay[s]," not a "change in residence" within the meaning of Condition 6. It may be plausible to read the condition as requiring notice of only changes in *permanent*

residence. More likely, however, the condition intends to impose a more stringent obligation on defendants serving terms of supervised release. Condition 6 is designed in part to maintain avenues of communication between a defendant and his probation officer. *See United States v. Smith*, 982 F.2d 757, 764 (2d Cir. 1992). Given that aim, it stands to reason that any changes in the defendant's residence—even changes only lasting a month—should be reported. This Spencer did not do.

The government's evidence similarly showed that Spencer violated Condition 6 by failing to report a change in employment. On monthly supervision reports in May and August of 2007, Spencer reported that his employer was Etronics. (Tr. 28:16–30:14.) In January 2008, the probation officer learned that Spencer had actually been fired by Etronics in April of 2007. (Tr. 30:15–31:11.) Spencer failed to inform his probation officer of that change in employment at the time it occurred, and he lied to the probation officer when later confronted about the omission. (Tr. 47:21–48:8.) Spencer now argues that Condition 6 does not apply to him: because he was fired abruptly, it would have been impossible for him to give ten days' advance notice to his probation officer, as the condition required. (Def.'s Post-Hearing Mem. 2.) He also contends that a "change in employment" encompasses only situations where a defendant changes jobs—not one where a defendant is fired. (*Id.* at 3.)

Neither of these arguments is convincing. The purpose of Condition 6, like "most of the standard conditions imposed, is a basic administrative requirement essential to the functioning of the supervised release system: that the defendant communicate with a supervising officer." *Smith*, 982 F.2d at 764. Spencer's reading of Condition 6, which requires ten days' notice prior to any change in employment, would excuse any defendant from having to report that he had been fired spontaneously and without prior notice. That argument is clever, but it belies

common sense.  The condition's purpose is to keep a probation officer informed when employment has changed, whether it has changed after ten days' notice or not.

Spencer's argument that "change in employment" excludes firing is also unavailing.  A change in employment occurs whenever a person moves from one place of employment to another, or from employment to unemployment, as Spencer did here.  *See United States v. Black Bear*, 542 F.3d 249, 256 (8th Cir. 2008) (affirming a finding that the defendant violated a similar condition of supervised release when he did not tell his probation officer that his employment had been terminated).  A narrower interpretation of the condition would be at odds with its text and purpose.

## CONCLUSION

The Court concludes that the government has shown by a preponderance of the evidence that the defendant violated a number of conditions of his supervised release. Especially serious are the defendant's violations of the condition not to commit a federal or state crime while on supervised release. The government's evidence shows that the defendant committed several New York crimes, including forgery in the second degree; possession of a forged instrument in the second degree; grand larceny in the third degree; and criminal possession of stolen property in the third degree.

Accordingly, the Court revokes the defendant's supervised release. The parties are directed to file, within fifteen (15) days, a submission that sets forth their position on the appropriate revocation penalty pursuant to Section 3583(e)(3).

SO ORDERED.

Dated: New York, New York
       December 2, 2009

_____
Richard J. Holwell
United States District Judge