UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

JOSEPH SPENCER,
                                 Defendant.

04 Cr. 1156 (PAE)

ORDER

---

PAUL A. ENGELMAYER, District Judge:

Defendant Joseph Spencer moves for reconsideration of the Court's denial of his motion seeking compassionate release from the Metropolitan Detention Center ("MDC") in Brooklyn, New York pursuant to 18 U.S.C. § 3582(c), due to the dangers presented by COVID-19. Dkt. 76 ("Def. Reconsideration Mem."). For the reasons that follow, the Court grants that motion.

**I.      Background**

On October 26, 2005, Spencer pled guilty to one count of bank fraud before the Hon. Richard J. Holwell. Dkt. 70 ("First Gov. Opp") at 1; *see also* Dkt. 61 ("Def. Sent. Submission") at 2–3 (detailing procedural history); Dkt. 62 ("Gov. Sent. Submission") at 1–3 (same). On February 16, 2006, Judge Holwell sentenced Spencer to time served, followed by three years' supervised release. First Gov. Opp. at 1. In 2008, Spencer was charged with a violation of supervised release, which alleged that he had participated in a scheme to cash unauthorized checks. *Id.* On July 7, 2011, Judge Holwell sentenced Spencer to 12 months and one day's imprisonment, plus 18 months' supervised release, for the violation. Gov. Sent. Submission at 2. Spencer was permitted to self-surrender on August 4, 2011 to serve that sentence, but never did so. First Gov. Opp. at 1.

On October 31, 2019, this Court, to whom this matter was assigned in light of Judge Holwell's retirement, was asked to—and did issue—a warrant for Spencer's August 2011 failure to appear, in violation of the terms of his release. Gov. Sent. Submission at 2. On December 20, 2019, Spencer was arrested in Florida and placed in the custody of the Bureau of Prisons ("BOP").[1] *See* First Gov. Opp. at 1; Dkt. 66 ("First Def. Mem.") at 2. On January 8, 2020, he was presented in the Middle District of Florida, and on March 4, 2020, he was transferred to this District, where he was held at the MDC. *See* Gov. Sent. Submission at 2; Def. Sent. Submission at 3. Spencer remained in custody until his recent release on June 9, 2020.

On May 5, 2020, Spencer pled guilty, before this Court, for violating supervised release by failing to appear to surrender in August 2011. First Gov. Opp. at 2. Sentencing was held the same day. *See id.* The Court revoked Spencer's supervised release and sentenced him to time served (*i.e.*, four-and-one-half months) for failing to appear, two months of which were to run consecutively with the sentence that Judge Holwell had imposed on the original supervised release violation and the balance to run concurrently. *See* First Def. Mem. at 3; *see also* Dkt. 71 (judgment). This sentence had the practical effect of adding two months to the sentence imposed by Judge Holwell for Spencer's underlying August 2011 supervised release violation, yielding a total combined sentence of 14 months and a day. The BOP calculates Spencer's projected release date as January 3, 2021. Dkt. 77 ("Gov. Reconsideration Opp.") at 1.

---

[1] In a declaration submitted on June 26, 2020, David Miranda of the BOP inaccurately attested that Spencer entered BOP custody on February 11, 2020. Dkt. 83-1 ("Miranda Decl.") ¶ 4. This conflicts with both parties' accounts—at sentencing and in their compassionate release submissions—that Spencer was taken into custody upon his arrest on December 20, 2019. Consistent with the calculations of all parties at the time of Spencer's sentencing, the Court treats December 20, 2019 as the first day of Spencer's incarceration.

Spencer first applied for compassionate release in the sentencing submission he filed in connection with the May 5, 2020 sentencing, Dkt. 61, which the Government opposed, Dkt. 63. The Court declined to rule on that application at the sentencing proceeding, stating that it would consider his application after sentencing, once the 30-day time period for the BOP's administrative review of Spencer's application had expired. *See* Dkt. 68 ("Sentencing Tr.") at 42. On May 7, 2020, Spencer filed a renewed application for compassionate release. First Def. Mem. On May 8, 2020, the Government filed an opposition. First Gov. Opp. On May 12, 2020, Spencer filed a reply. Dkt. 72 ("First Def. Reply").

On May 13, 2020, the Court denied Spencer's motion for compassionate release. Dkt. 73 ("CR Order"). In that order, the Court credited that Spencer's medical conditions may place him at a heightened risk if he were to contract COVID-19. *Id.* at 3. The Court also found that Spencer did not present a danger to the community, noting the Government did not dispute this point. *Id.* at 4. However, the Court held that the factors set forth in 18 U.S.C. § 3553(a), on balance, did not then justify Spencer's release, because Spencer had yet to serve the majority of his sentence. *See id.* at 4–5.

On June 10, 2020, the Government filed a letter, informing the Court that, on June 9, 2020, the BOP, apparently by mistake, had released Spencer from the MDC. Dkt. 75. The Government reported that Spencer was taking a bus to Florida, where his family lives. *Id.*

On June 11, 2020, Spencer moved for reconsideration of the denial of compassionate release in light of new evidence, including Spencer's release by the BOP. Def. Reconsideration Mem.

The same day, the Government filed a letter stating that the BOP had released Spencer in error. The BOP, it explained, in calculating the remaining time that Spencer was required to

serve in custody, had overlooked the year-and-a-day sentence imposed by Judge Holwell, and had considered only the time-served sentence this Court had imposed for Spencer's failure to appear for Judge Holwell's sentence. Gov. Reconsideration Opp. at 1. The Government also opposed Spencer's motion for reconsideration. *See id.* at 1–2. It asked the Court to order Spencer to report to the BOP, presumably in Florida, to serve the remainder of his sentence. *See id.* at 1; Dkt. 75 at 1.

On June 22, 2020, the Court issued an order, directing that BOP officials submit affidavits explaining how Spencer came to be released, what steps had been taken to ensure his safety upon his sudden release during the pandemic, and the steps the BOP was prepared to take to return Spencer safely to custody. Dkt. 78. The Court stated that, pending a decision on his motion, Spencer was to remain on home detention, which would count toward his term of imprisonment, and instructed the Government to confer with the Probation Department and the defense as to the parameters of such home detention. *Id.* at 2.

Later that day, Spencer's counsel filed a letter update, explaining that Spencer had been released in the late evening on June 9, 2020, not after midnight the following day as counsel had initially reported. Dkt. 80 ("Def. Reconsideration Reply") at 1. Spencer's counsel represented that, before he had been released, Spencer had repeatedly questioned BOP officials at the MDC about the release, stating that he believed he had time left to serve, and had even told BOP personnel that "they had the wrong guy." *Id.* However, Spencer's counsel represented, the BOP had assured Spencer that there was no mistake, and thereupon released Spencer without notifying his family or counsel, making arrangements for him to be picked up, or providing him access to public transportation. *See id.* Spencer's counsel stated that, since the release, she had been in regular communication with Spencer, who by then had arrived at his family's home in Florida,

4

since his release. *See id.* at 2. She further stated that Spencer had asked questions about where he should be and with whom he should be checking in, and had requested that she be fully transparent with the Government as to his whereabouts. *Id.*

On June 22 and June 23, 2020, the Government filed two letters, explaining that the Probation Department could no longer supervise Spencer because the sentence imposed upon revocation of his term of supervised release consisted solely of a term of imprisonment and not a new term of supervised release. Dkt. 79. Nor, the Government stated, could the BOP supervise him at home, because the BOP would likely not exercise its discretion to place Spencer in its home confinement program. Dkt. 82. On June 26, 2020, the Government submitted the affidavits from BOP officials, which had been ordered by the Court. Dkts. 83-1–2. These affidavits proposed that Spencer voluntarily surrender at a BOP facility in Florida. *See* Miranda Decl. ¶ 18.

## II.   Discussion

Spencer moves for reconsideration of the Court's May 13, 2020 denial of his motion for compassionate release, in large part due to the changed circumstances presented by his recent release by the BOP. Spencer is age 53 and has a range of underlying health conditions that heighten his vulnerability to COVID-19. After his release from BOP custody in New York, he traveled to his family in Florida by bus, where he remains today. He argues that returning him to BOP custody in Florida during the pandemic would compound the health risks he faced at the time of his application. The Government opposes Spencer's motion, arguing that it is untimely and that it lacks merit.

The Court finds that, in the highly unusual circumstances here, it is proper to grant both Spencer's motion for reconsideration and his underlying application for compassionate release.

As to timeliness, the Government argues, and Spencer does not contest, that his motion is untimely. Gov. Reconsideration Opp. at 1. Under Criminal Local Rule 49.1, a motion for reconsideration should be filed within 14 days of the Court's original decision.[2] S.D.N.Y. Criminal Local Rule 49.1(d). Spencer's motion was filed on June 11, after this deadline.

"However, courts retain discretion to excuse an untimely filing[.]" *Lisi*, 2020 WL 1331955, at *1 (excusing untimeliness); *see also United States v. Okparaeke*, No. 17 Cr. 225 (NSR), 2019 WL 4233427, at *2 (S.D.N.Y. Sept. 6, 2019) (explaining that courts may excuse untimeliness where there is good cause to do so).

The Court finds that excusing the untimeliness is warranted here. Spencer was abruptly and unexpectedly released from BOP custody the night of June 9, 2020, and Government and defense counsel learned of his release the following day, June 10, 2020. *See* Dkt. 75 at 1; Def. Reconsideration Mem. at 2. Recognizing that this consequential development—and the health risks to Spencer presented by a return to custody—could bear on the Court's assessment of the factors under 18 U.S.C. § 3553(a) relevant to Spencer's application for compassionate release, Spencer's counsel promptly filed a motion for reconsideration, which was dated June 10, 2020 and docketed shortly after one in the morning on June 11, 2020. Spencer's counsel thus acted with dispatch in filing the motion, filing it hours after discovering the new facts that merited reconsideration. And the new facts on which Spencer's bid for reconsideration largely hinges had not occurred, and could not have been anticipated, as of the date (May 27, 2020) when the

---

[2] Before the recent passage of Criminal Local Rule 49, courts in this District relied on Civil Local Rule 6.3, which also provided a 14-day deadline. *United States v. Lisi*, No. 15 Cr. 457 (KPF), 2020 WL 1331955, at *1 n.1 (S.D.N.Y. Mar. 23, 2020). As such, the Court cites cases drawn from both of these contexts.

14-day deadline for such a motion occurred.  The Court therefore finds good cause to excuse Spencer's late filing.

As to the merits, "[t]he decision to grant or deny a motion for reconsideration is within the sound discretion of the district court." *Lisi*, 2020 WL 1331955, at *1 (quoting *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 383, 403 n.6 (S.D.N.Y. 2011)).  Such a motion may be granted where the moving party "identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).  As to new evidence that may justify reconsideration, "[p]erhaps the easiest circumstances involve new events[.]"  18 Wright, Miller & Cooper, Federal Practice and Procedure § 4478 (2d ed.).

Here, there are several items of new evidence that bear on the § 3582(c)(1)(A) analysis.  These include the greater share of his sentence that Spencer has now served, the BOP's release of Spencer, and the dire coronavirus conditions in Florida, where Spencer is residing and where the BOP proposes that he submit to its custody.  The Court evaluates this evidence, alongside the evidence earlier available, against the standards governing applications for compassionate release under § 3582(c)(1)(A), which are by now familiar. Specifically, the Court considers (1) whether the defendant has demonstrated extraordinary and compelling reasons for his release; (2) whether the defendant presents a danger to the community; and (3) whether the defendant's release would be consistent with the § 3553(a) factors.  *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13.

In its May 13, 2020 decision denying Spencer's initial application for compassionate release, the Court found that the first two factors weighed in favor of Spencer's release. *See* CR Order at 3–4. The Court reaffirms and amplifies those findings here.

First, Spencer has demonstrated extraordinary and compelling reasons for his release. As this Court observed in its earlier decision, the COVID-19 pandemic is unprecedented in modern times in this nation. It presents a clear and present danger for reasons that need no elaboration. And the Government is asking that Spencer return to—and be quartered—in a BOP facility, the crowded nature of which inherently presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread.[3] This spread, and ensuing fatalities, have already been documented— and the data reveals dramatically higher rates of COVID spread and fatalities in prisons than in the general population.[4] Compounding this risk, the BOP is requesting that Spencer surrender to a BOP facility in Florida, which today has emerged as a focal point of the pandemic in the

---

[3] *See* Timothy Williams et al., *'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars*, N.Y. Times (Mar. 30, 2020, updated May 20, 2020), https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html; *see also United States v. Nkanga*, --- F. Supp. 3d ---, No. 18 Cr. 713 (JMF), 2020 WL 1529535, at *1 (S.D.N.Y. Mar. 31, 2020) (citing *Interim Guidance on Mgmt. of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control and Prevention, 2 (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf) (highlighting danger faced by those in jails and prisons).

[4] *See* Brendan Saloner et al., *COVID-19 Cases and Deaths in Federal and State Prisons*, JAMA (July 8, 2020), https://jamanetwork.com/journals/jama/fullarticle/2768249 (finding that from March 31, 2020 to June 6, 2020, the COVID-19 case rate for prisoners was 5.5 times higher than the U.S. general population case rate and that the COVID-19 death rate, when adjusted for age and sex, was three times higher in the prison population than what would be expected in the U.S. general population).

United States, with the number of confirmed cases in the state doubling in the last two weeks.[5] Rather than, for example, providing for Spencer's medically safe transit to a facility in New York, where the spread of COVID-19 has been dramatically curtailed, the BOP envisions that Spencer report to a correctional facility in perhaps the hottest coronavirus hotspot in the country.

Spencer's preexisting medical conditions exacerbate the risk that COVID-19 presents to him. Spencer, age 53, represents that he has a range of medical conditions that place him at high risk if he were to contract COVID-19. These are documented in detail in under-seal filings. In brief, these include hypertension, a congenital heart defect of a twisted aorta, latent tuberculosis, chronic kidney disease, and potentially Type 2 diabetes. *See* First Def. Mem. at 5–7; First Def. Reply at 1–2; *see also* Dkt. 63-1 ("Med. Records"). The Centers for Disease Control and other researchers have found that each of these potentially presents at least some degree of heightened risk for COVID-19.[6] Although the Government quibbles with aspects of three of these five

---

[5] *See* Vera Bergengruen, *'How Do You Do a Lockdown Backwards?' Two Months After Reopening, Florida Tries to Clamp Down*, TIME (July 8, 2020), https://time.com/5864130/florida-coronavirus-spike/; *see also, e.g.*, Cleve R. Wootson, Jr. et al., *Florida invited the nation to its reopening — then it became a new coronavirus epicenter*, Wash. Post (July 7, 2020), https://www.washingtonpost.com/national/florida-invited-the-nation-to-its-reopening--then-it-became-a-new-coronavirus-epicenter/2020/07/07/74645c82-c069-11ea-b178-bb7b05b94af1_story.html (describing Florida as "a coronavirus epicenter" and noting that, among other things, nearly 1 out of every 100 Florida residents has COVID-19 and 52 intensive care units in the state have reached capacity); Frances Robles, *Florida's Covid Cases Up Fivefold in 2 Weeks: 'The Numbers Are Scary'*, N.Y. Times (June 28, 2020, updated June 30, 2020), https://www.nytimes.com/2020/06/28/us/coronavirus-florida-miami.html (highlighting that Florida has over 9,000 new COVID-19 cases per day and its hospitals are nearing capacity).

[6] *See, e.g.*, *People of Any Age with Underlying Medical Conditions*, Ctrs. for Disease Control and Prevention (June 25, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (people are at increased risk for severe illness from COVID-19 if they have chronic kidney disease, serious heart conditions, or type 2 diabetes, and they may be at increased risk if they have hypertension); Yogyu Liu et al., *Active or latent tuberculosis increases susceptibility to COVID-19 and disease severity*, medRxiv, 1–2 (Mar. 16, 2020), https://www.medrxiv.org/content/10.1101/2020.03.10.20033795v1.full.pdf

9

diagnoses (the congenital heart defect, latent tuberculosis, and chronic kidney disease), *see* First Gov. Opp. at 3–4, the Court finds a sound basis in Spencer's medical records for contending that Spencer suffers from each of these conditions.[7]  As such, the Court has no difficulty finding that Spencer is clearly at palpably higher risk for serious complications from COVID-19 than the average individual.

As to the second factor, the Court finds—as it noted both at Spencer's sentencing, *see* Sentencing Tr. at 19–20, and in its original compassionate release order, CR Order at 4—that Spencer does not present a danger to the community.  For nearly nine years, since his failure to surrender in August 2011, Spencer has been crime-free.  *See* Def. Sent. Submission at 5.  Until his arrest in December 2019, he lived openly in Florida, had stable employment, and had a stable family life with his six children and his partner of nine years.  *See id.* at 3–5.  And, once in BOP custody after his apprehension, there is no indication that Spencer incurred any disciplinary infractions.  Spencer's capacity for restraint and obedience was most recently exhibited during the events of June 9:  When BOP personnel attempted to release him, he repeatedly advised them they were mistaken and that he had more time yet to serve.  *See* Def. Reconsideration Reply at 1–2.  And after he was errantly released, he traveled to his family and stayed in close contact with his counsel.  *See id.* at 2.  There is no suggestion that, since his release, he has breached the terms of home confinement or committed any other crime or infraction.  His record since August 2011 is entirely clean.  The Court is confident that Spencer—as much as almost any other inmate

---

(study of 36 COVID-19 cases in China, which found that patients with active or latent tuberculosis were more susceptible to COVID-19 and had more rapid and severe symptoms).

[7] *See, e.g.*, Med. Records at 5 (suspected chronic kidney disease ("CKD")); *id.* at 8 (hypertension, twisted aorta, latent tuberculosis ("LTBI")); *id.* at 70 (hemoglobin A1C of 7.2%, which is indicative of diabetes); *id.* at 81 (twisted aorta).

whose application for compassionate release the Court has considered in the past four months—does not present a danger to the community.

Unlike the first two factors, in its earlier decision, the Court found that the final factor—namely, the combined import of the § 3553(a) factors, which require that the sentence reflect the seriousness of the offense and the need to promote respect for the law, to provide just punishment, and to afford adequate deterrence—counseled in favor of denying compassionate release. *See* CR Order at 4–5. That was because Spencer had by then served only approximately four-and-one-half months of the 14 months and one day that he was obliged to serve in prison on the combined sentences imposed by Judge Holwell (for the original supervised release violation) and this Court (for Spencer's 2011 failure to appear).

The § 3553(a) calculus is different now. Spencer has now served close to six months in prison and another one month in home confinement awaiting completion of briefing on, and the disposition of, his motion for reconsideration. He is today close to the halfway point of his overall sentence. Taking into account accumulated and anticipated good time credit and his projected release date of January 3, 2021—less than six months away—he has served more than half of his sentence. This Court has granted compassionate release to, among others, two defendants with serious medical conditions, whom it found not to be a danger to the community and who had served less than a majority of their sentences. *See United States v. Davies*, No. 18 Cr. 390 (PAE), Dkt. 479 at 1, 5 (S.D.N.Y. June 26, 2020) (defendant had served 25 months of 60-month sentence); *United States v. Brown*, No. 18 Cr. 390 (PAE), Dkt. 472 at 5 (S.D.N.Y. June 17, 2020) (defendant had served 24 months of 66-month sentence). Although Spencer is somewhat younger and somewhat less infirm than these defendants, he also has less

11

time remaining on his sentence than did defendants Davies and Brown.  All factors considered, his claim to compassionate release is fairly likened to theirs.

Important, too, are the events surrounding and following Spencer's release by the BOP, which lend support to his application for compassionate release.  In its handling of this individual in its care, the BOP has distinguished itself at once by its incompetence and its insensitivity to health hazards.  On June 9, the BOP abruptly released Spencer into the New York night.  In doing so, it ignored his protests that he had time left to serve.  The BOP did so without forewarning to or coordination with Spencer, his counsel, or his family.  And although the BOP tested Spencer before his release to confirm that he was negative for COVID-19, the BOP did nothing to assure his safety thereafter.  It took no steps to assure that an inmate, whose medical conditions and age put him at obvious heightened risk from the COVID-19 pandemic, was able to travel safely to his home in Florida.  Spencer, who had last been at liberty three months before the pandemic struck the United States, was instead left to make his own way home, which he did, predictably, by bus travel through a series of states hard-hit by the pandemic.  The BOP's heedless and unplanned release of Spencer in the midst of a once-in-a-century pandemic bespeaks the antithesis of compassion.  The BOP's ensuing demand, upon discovering its mistake, that Spencer self-report to a prison in Florida, the pandemic's current epicenter, bespeaks no greater sensitivity to his well-being.

Simply put, these assembled circumstances leave the Court with no confidence that the BOP, were it retake custody of Spencer, would be seriously committed to assuring his health and safety or competent to secure these ends.  Spencer's ability to avoid contracting COVID-19, the Court finds, is far greater at home than in BOP custody.

The Court accordingly finds that, in light of changed and present circumstances, the § 3553(a) factors are now compatible with, and indeed favor, his compassionate release. Spencer's history and characteristics and the need to safeguard his health and assure him adequate medical care must now weigh prominently in the analysis. Weighing these factors, along with the fact that Spencer has served almost half of his sentence and that his release does not present a risk to public safety, the Court finds that the § 3553(a) factors now firmly favor his release.

Accordingly, for the foregoing reasons, the Court grants Spencer's motion for reconsideration and his underlying motion for compassionate release. The Clerk of Court is respectfully directed to terminate the motion pending at docket 76.

SO ORDERED.

*Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge

Dated: July 10, 2020
       New York, New York